648 So.2d 748 (1994)
BOARD OF REGENTS OF the STATE OF FLORIDA, Acting by and through the UNIVERSITY OF SOUTH FLORIDA, Appellant/Petitioner,
v.
Petr TABORSKY, Appellee/Respondent.
Nos. 93-02592, 93-02837.
District Court of Appeal of Florida, Second District.
September 14, 1994.
Rehearing Denied November 3, 1994.
*749 John W. Boult, Sylvia H. Walbolt and J. Kevin Carey of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant/petitioner.
Beth E. Minsky of National Coalition for Universities in the Public Interest, Washington, DC, and Bill Wagner of Wagner, Vaughan & McLaughlin, P.A., Tampa, for appellee/respondent.
CAMPBELL, Judge.
Appellant, Board of Regents of the State of Florida, acting by and through the University of South Florida (USF), brings this interlocutory appeal (Case No. 93-02837) from a nonfinal order that denied USF's request for civil injunctive relief against appellee, Petr Taborsky. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B), and reverse. Appellant has simultaneously petitioned this court for a writ of certiorari (Case No. 93-02592) seeking relief from the denial of a motion for summary judgment against Petr Taborsky. Although the petition for certiorari presents a more difficult jurisdictional issue, since we conclude that the trial judge clearly departed from the essential requirements of law as enunciated by the Legislature in enacting sections 772.14 and 775.089(8), Florida Statutes (1991), we also grant the petition for certiorari and direct entry of summary judgment. While we denied an earlier motion to consolidate these proceedings, we directed that they be presented simultaneously to the same panel of judges of this court. That having been accomplished, we now consolidate these proceedings for purposes of this opinion.
The essential facts are that in August 1987, USF contracted with Progress Technologies Corporation (PTC) to provide research in the area of municipal wastewater management and treatment. The research project focused, in part, on improving the use of clinoptilolite (clino) in the wastewater treatment process. PTC and USF executed an agreement requiring that the research remain proprietary and confidential. Progress Water Technologies Corporation (PWT), an affiliate of PTC, subsequently contracted with USF to continue and expand the clino research. That agreement also required the research to remain proprietary and confidential.
Taborsky, an undergraduate research assistant, worked on this research project and understood the confidential and proprietary nature of the research. He entered into a confidentiality agreement with PWT, which the parties intended would apply to all research relating to the project. Taborsky agreed to protect the confidentiality of the proprietary information and not exploit or otherwise use the information without PWT's consent. Taborsky further agreed to return all documents relating to this information to PWT.
Following a Christmas vacation break, Taborsky left USF and never returned as a student. He took with him laboratory notebooks containing proprietary and confidential research. Taborsky refused to respond to repeated requests for return of the notebooks and other information and, in July 1989, was charged with violating section 812.014(2)(b), Florida Statutes (1987), in one count of second degree grand theft and with violating section 812.081(2), Florida Statutes (1987), in one count of theft of trade secrets. The information charged Taborsky as follows:
COUNT I
PETR TABORSKY, between on or about the 1st day of DECEMBER, 1988 and on *750 or about the 20th day of JANUARY, 1989, inclusive, in the County of Hillsborough and State of Florida, did unlawfully obtain or use, or endeavor to obtain or use certain property of another, to-wit: research notebooks, a compilation of research information, experimental data, formulas and devices, the property of PROGRESS TECHNOLOGICAL CORPORATION AND/OR PROGRESS WATER TECHNOLOGIES CORPORATION AND/OR UNIVERSITY OF SOUTH FLORIDA, the value of said property being twenty thousand ($20,000.00) dollars or more, but less than one hundred thousand ($100,000.00) dollars in money current in the United States of America; and in so doing the defendant intended either to permanently or temporarily deprive the said PROGRESS TECHNOLOGICAL CORPORATION AND/OR PROGRESS WATER TECHNOLOGIES CORPORATION AND/OR UNIVERSITY OF SOUTH FLORIDA of a right to the property or a benefit therefrom, or to appropriate the property to his own use or to the use of any person not entitled thereto,
COUNT TWO
PETR TABORSKY, between on or about the 1st day of DECEMBER, 1988 and on or about the 20th day of JANUARY, 1989, inclusive, in the County of Hillsborough and State of Florida, did unlawfully steal or embezzle trade secrets or articles representing trade secrets, to-wit: a certain compilation of research information, experimental data, formulas and devices, with intent to deprive or withhold from the owners thereof, to-wit: PROGRESS TECHNOLOGICAL CORPORATION AND/OR PROGRESS WATER TECHNOLOGIES CORPORATION AND/OR UNIVERSITY OF SOUTH FLORIDA, the control of the said trade secrets, or with intent to appropriate said trade secrets to his own use or to the use of another, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.
In January 1990, a jury convicted Taborsky of the second degree grand theft charge of violating section 812.014(2)(b), and a lesser included count of theft of trade secrets. Taborsky was sentenced to one year of house arrest, fifteen years probation and 500 hours of community service.
As a condition of Taborsky's probation, the judge expressly prohibited him from using the stolen research for any purpose. The judge further ordered that "pursuant to Florida Statute 775.089(8) [Taborsky] is hereby estopped by his conviction for grand theft in this case from denying the essential allegations of this offense in any subsequent civil proceeding." This court affirmed Taborsky's conviction, sentence and probation conditions in Taborsky v. State, 579 So.2d 146 (Fla. 2d DCA 1991).
In violation of the circuit court's sentencing order, Taborsky obtained a patent that included or was related to the research he stole from USF. In response, the state attorney's office moved to revoke his probation. The criminal court ruled that Taborsky willfully and intentionally violated his probation and, accordingly, revoked his probation and sentenced him to three-and-one-half years of incarceration, suspended, and placed him on fifteen years probation. The criminal court further directed Taborsky to assign his patent to USF as restitution. Taborsky's appeals of the revocation of his probation are pending before this court in other cases. Those issues involving the assignment to patent rights are not before us in this appeal.
By virtue of assignments from the other victims of Taborsky's theft, USF now owns all of this research and the right to pursue any claims against Taborsky relating to the research.
USF then filed a civil action against Taborsky, seeking to enjoin him from using the protected research under the provisions of sections 772.14 and 775.089(8), which operate to collaterally estop a criminal defendant in a subsequent civil suit from requiring the civil plaintiff to relitigate facts resolved in the earlier criminal action, to obtain a civil injunction that would replicate the criminal injunction and judgment by declaring that USF owns the research that was the subject *751 of the criminal convictions and enjoining Taborsky from using such research for his own benefit. Although the civil trial court took judicial notice of the criminal proceeding by accepting the criminal court file as a matter of record, it has refused to enter injunctive relief and summary judgment.
USF has repeatedly emphasized the limited nature of the summary and injunctive relief it seeks. It merely seeks the same relief initially granted by the criminal court that addressed these identical issues when adjudicating Taborsky guilty of the criminal charges. The relief sought does not relate to the assignment of patent rights. Taborsky never questioned the breadth or scope of property covered by the criminal information and the resulting judgment of conviction and probation orders. This court's affirmance of the criminal action now precludes Taborsky from raising this purported defense. We conclude that the trial court erred in refusing to grant the requested injunction because we find that sections 772.14 and 775.089(8) apply. The essential allegations of USF's amended and supplemental complaint which we conclude have successfully employed sections 772.14 and 775.089(8) to estop Taborsky from defending against them are as follows:
Plaintiff, Board of Regents Of The State Of Florida, acting by and through the University of South Florida ("USF"), sues defendant Petr Taborsky ("Taborsky"), and alleges:
1. This action seeks a temporary and permanent injunction, specific performance, damages, and other relief, arising from the unlawful detention by Taborsky of four (4) laboratory notebooks belonging to USF.
... .
28. On July 12, 1989, the State of Florida filed an information against Taborsky, charging him with one count of second degree grand theft and one count of theft of trade secrets. A copy of that information is attached hereto as Exhibit G. Taborsky was convicted on both counts and his conviction was affirmed by the Second District Court of Appeal by its per curiam decision dated March 29, 1991. A copy of that decision is attached as Exhibit H. Following his conviction and pursuant to the order of the Circuit Court in the criminal case, Taborsky returned the laboratory notebooks to USF but he has continued to assert his right to market that proprietary information and to seek a patent on the basis of that proprietary information.
29. In order to protect their rights, PTC and PWT have assigned to USF all of their claims against Taborsky with respect to, among other things, recovering the notebooks and restraining the use by Taborsky of trade secrets and proprietary information. Copies of these assignments are attached as Composite Exhibit I and incorporated herein.
Count I  Temporary and Permanent Injunction
30. This is an action for temporary and permanent injunctive relief with respect to property rights exceeding $15,000.00 in value.
31. USF realleges each of the allegations contained in paragraphs 1 through 28 of the Complaint.
32. The laboratory notebooks unlawfully detained by Taborsky are the very essence of the research projects conducted by USF on behalf of PTC and PWT. The notebooks contain highly sensitive proprietary information, trade secrets, and confidential data, including but not limited to, raw data on the:
(1) regeneration of clino;
(2) effects on capacity and selectivity of clino caused by certain treatments;
(3) loss of clino material resulting from certain treatments; and
(4) pH changes to clino as a result of certain treatments.
All of the foregoing data was available to Taborsky in the course of his employment by USF to work on the PTC and PWT research projects.
33. The information contained in the notebooks was indispensable to the analyses of the research work and USF's continuation of the research projects, and to eventually obtaining a patent for the techniques developed in the laboratory.

*752 34. Taborsky improperly removed the only copies of the notebooks then available, which reflected thousands of hours of research time and effort and the trade secrets, confidential data, and proprietary information, which had been paid for by PTC and PWT.
35. Upon information and belief, Taborsky intends to (and may have already done so) market this proprietary information and otherwise disclose it to third parties, thus causing immediate and irreparable harm to USF, PTC and PWT.
36. USF, PTC, and PWT have invested considerable resources in developing and paying for the research discussed above, which has generated trade secrets, proprietary information, and confidential data recorded in the notebooks from that research. Taborsky, however, has pirated these secrets and the proprietary information without paying for them, and he threatens to use the results of the research to compete unfairly with PTC and PWT. At this time, the full extent of the damages to PTC and PWT cannot be calculated in dollars and cents.
37. As a result of the foregoing, Taborsky has unlawfully misappropriated trade secrets and proprietary information as prohibited by the Uniform Trade Secrets Act, Sections 688.002, et seq., Fla.Stats., and the common law.
38. USF, PTC and PWT have no adequate remedy at law, and all conditions precedent to the relief demanded herein have been performed or have occurred.
WHEREFORE, USF respectfully requests that pending a decision on the trial of this matter and permanently, Taborsky, his agents, representatives, and those acting in concert with him, shall be enjoined and restrained from using, disclosing, or duplicating the trade secrets, proprietary information and confidential data obtained by him during his employment as a USF student assistant on the PTC and PWT research projects, including but not limited to, the trade secrets, proprietary information, and confidential data contained in the notebooks.
Count II  Specific Performance
39. This is an action for the specific performance of the Confidentiality Agreement between Taborsky and PWT.
40. USF realleges each of the allegations contained in paragraphs 1 through 29 of the Complaint.
41. On October 28, 1988, Taborsky executed the Confidentiality Agreement with PWT that provides, among other things that:
A. I [Taborsky] agree not to disclose PROPRIETARY INFORMATION to any person whomsoever, directly or indirectly, without the written consent of PWT.
B. I [Taborsky] agree not to use or exploit the PROPRIETARY INFORMATION for any purpose whatsoever without the written consent of PWT, except to evaluate the commercial or technical merits of the PROPRIETARY INFORMATION.
C. I [Taborsky] agree to return to PWT all documents, drawings or other physical representations of PROPRIETARY INFORMATION and any copies thereof promptly upon request by PWT.
... .
43. Taborsky has refused to comply with the terms of the Confidentiality Agreement as evidenced by, among other things, his refusal to return the notebooks, which constituted "documents, drawings or other physical representations of proprietary information" belonging to PWT under the Confidentiality Agreement, until compelled by the Circuit Court to do so after his conviction.
44. The property rights and subject matter pertaining to the Confidentiality Agreement are unique, and as a result, damages resulting from a breach of the Confidentiality Agreement are at this time inadequate and impracticable to determine.
45. USF and PWT have no adequate remedy at law.
WHEREFORE, USF demands judgment that Taborsky be required to specifically perform the Confidentiality Agreement, *753 and that USF be awarded the costs of this action.
Count III  Breach of Fiduciary Duty
46. This is an action for breach of fiduciary duty, and the duties of honesty, good faith and loyalty, which seeks damages in excess of $15,000.00.
... .
50. Taborsky, through his conduct described herein, has breached his fiduciary duty to USF, as well as his duties of honesty, good faith and loyalty.
51. USF has been damaged by these actions.
WHEREFORE, USF demands judgment against Taborsky for damages exceeding $15,000.00, and the costs of this action, and such other relief as may be necessary or appropriate.
Count IV  Civil Theft
52. This is an action under the Civil Remedies for Criminal Practices Act, Sections 772.101, et. seq., Fla.Stats., which seeks statutory damages in excess of $15,000.00.
... .
54. On or about December 20, 1988 and thereafter, the defendant Petr Taborsky, did knowingly, wilfully, and unlawfully obtain and use, and endeavor to obtain and use, the property of another with criminal intent to deprive the other person of a right to the property or a benefit therefrom and to appropriate the property to his own use and to the use of another person not entitled thereto; specifically, that property known and described herein as the notebooks belonging to USF, all in violation of Sections 812.012 and 812.014, Fla.Stats.

55. On or about December 20, 1988 and thereafter, the defendant Petr Taborsky did knowingly, wilfully, unlawfully, and with criminal intent to deprive or withhold from the owner thereof the control of a trade secret and with the criminal intent to appropriate a trade secret to his own use or to the use of another, steal and embezzle an article representing a trade secret; specifically, the trade secrets represented by the notebooks belonging to USF, all in violation of Section 812.081, Fla.Stats.

56. As a result of the foregoing, USF has been injured by reason of violations of Sections 812.012, 812.014, and 812.081, Fla. Stats., and is entitled to judgment against Taborsky as provided for under Section 772.14, Fla.Stats., and to damages, attorney's fees and costs as provided for under Section 772.11, Fla.Stats.

WHEREFORE, USF demands judgment for threefold the actual damages sustained by USF, PTC and PWT and the costs and attorney's fees of this action, and such other relief as may be necessary or appropriate.
As we earlier observed, we clearly have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B) to address the denial of USF's request for temporary and permanent injunctive relief. Even without employing sections 772.14 and 775.089(8), this case clearly cries out for injunctive relief as requested by USF. USF did not request injunctive relief in regard to the assignment of any patent rights. Such an injunction would simply prohibit Taborsky from using and/or benefitting from the protected research that he was convicted of stealing. When section 772.14 is considered and applied, injunctive relief is even more clearly required.
Section 772.14 grants crime victims in Florida a valuable litigation tool that eliminates the victim's need to reestablish the convicted defendant's liability in a subsequent civil action relating to the same criminal conduct. Section 772.14 provides:
A final judgment or decree rendered in favor of the state in any criminal proceeding concerning the conduct of the defendant which forms the basis for a civil cause of action under this chapter, or in any criminal proceeding under chapter 895, shall estop the defendant in any action brought pursuant to this chapter as to all matters as to which such judgment or decree would be an estoppel as if the plaintiff had been a party in the criminal action.
*754 The trial court's denial of injunctive relief ignored the collateral estoppel effect of Taborsky's earlier criminal convictions. Collateral estoppel conclusively establishes all facts necessary to mandate the injunctive relief requested by USF. See Metropolitan Life Ins. Co. v. Austin, 461 So.2d 252 (Fla. 2d DCA 1984). In Metropolitan, this court granted interlocutory relief and required the trial court to honor an earlier entered injunction.
Similarly, USF asks the trial court to apply collateral estoppel principles and enter the identical scope of injunction entered by the criminal court. That injunction prohibited Taborsky from using any of the research that was the subject of PTC, PWT or the confidentiality agreement and from pursuing any patent based on his research. The criminal court injunction, however, does not afford USF itself relief. USF is not a party to the criminal action and must channel any requests as victim through the state attorney's office. The Legislature recognized this limitation and modified Florida law to afford the victim full recovery as a party in a related civil action. §§ 772.14, 775.089(8). In this forum, the victim has the ability to minimize further damage from the criminal conduct and maximize the potential for recovery. Toward that end, the statute allows USF to gain a civil injunction based on facts conclusively established in the criminal action. Requiring USF to proceed through trial before obtaining injunctive relief would defeat the purpose of the conclusive presumptions afforded the criminal findings.
In contrast to federal law, Florida common law had not previously applied collateral estoppel in a subsequent civil suit brought by the victim against the felon. The Florida courts had long adhered to the requirement that the victim must have been a party to the criminal action. See Trucking Employees of North Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843 (Fla. 1984); Nunez v. Gonzalez, 456 So.2d 1336 (Fla. 2d DCA 1984). However, in 1986, by enacting section 772.14, the Legislature substantially changed Florida law by eliminating the requirement that the victim be a party to the criminal action in certain enumerated situations including, specifically, actions for civil theft arising from violations of sections 812.012 and 812.037, Florida Statutes (1991). In so doing, the Legislature significantly increased the victim's ability in those circumstances to seek relief against the convicted felon without the long delay and cost associated with civil litigation.
Both Congress and the Florida Legislature intended for the victim to apply collateral estoppel so as to conclusively establish facts resolved by the criminal action.
Section 775.089(8) provides in pertinent part: "The conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent civil proceeding." Section 775.089(8) is almost identical to the federal Victim and Witness Protection Act of 1982. 18 U.S.C. § 3664(e) (initially enacted as 18 U.S.C. § 3580 (e)); Paterno v. Fernandez, 569 So.2d 1349, 1351 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1309 (Fla. 1991). The federal statute codified existing federal law that granted collateral estoppel effect to a prior criminal conviction. United States v. Satterfield, 743 F.2d 827, 833 (11th Cir.1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). See 40 U.Fla.L.Rev. 461, Sawaya, Use of Criminal Convictions in Subsequent Civil Proceedings (1988).
Thus, in regard to the denial of injunctive relief, our jurisdiction being clearly established, we conclude the trial judge erred. USF is entitled to the injunctive relief requested. The criminal court order prohibited Taborsky from any further use of the stolen research. By application of collateral estoppel, USF is entitled to a similar civil injunction to protect USF from Taborsky's further wrongful use of the research. Florida courts uniformly recognize their ability to grant injunctive relief to prevent further injury for the misappropriation of trade secrets or protected research. Dotolo v. Schouten, 426 So.2d 1013, 1015 (Fla. 2d DCA), rev. denied, 434 So.2d 888 (Fla. 1983). In addition, the Florida Uniform Trade Secrets Act grants injunctive relief for misappropriation *755 of trade secrets. § 688.003, Fla. Stat. (1991).
We have had more of a struggle in concluding that we have jurisdiction to grant USF's petition for certiorari in regard to the denial of its motion for summary judgment. In that regard, we have carefully considered the analogies of Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla. 1992). In that case, the supreme court held prohibition to be an improper writ to be employed to raise the defense of workers' compensation immunity pursuant to section 440.11, Florida Statutes (1983) in a personal injury action. We find several pertinent distinguishing factors in that case that cause us to reach the conclusion that we should grant certiorari in this proceeding. In Mandico, first of all, the supreme court found that a contractor's immunity under section 440.11 "is not apparent from a simple reading of the Workers' Compensation Law... ." 605 So.2d at 852. A defendant's estoppel is readily apparent from reading sections 772.14 and section 775.089(8). Thus, legislative intent is clearly and unequivocally expressed. Even more persuasive is the Mandico court's holding that "[t]he assertion that the plaintiff's exclusive remedy is under the workers' compensation law is an affirmative defense, and its validity can only be determined in the course of litigation."
The remedy of collateral estoppel provided for a victim in sections 772.14 and 775.089(8) is not in the nature of an affirmative defense but, on the contrary, provides that the defendant cannot defend. At best, any such attempted defense should be subject to a motion to strike and then a motion for summary judgment. The very intent of the Legislature in enacting sections 772.14 and 775.089(8) is to relieve a victim from the added expense, time and mental anguish of a second trial. For the courts to refuse to require summary judgment to be entered in such circumstances would clearly thwart the intent of the Legislature and would render to a victim an inadequate remedy if the only relief were an appeal after trial.
We conclude the situation presented to us on the petition for certiorari is just the type of circumstance envisioned by the court in Tucker v. Resha, 610 So.2d 460 (Fla. 1st DCA 1992), rev. granted, 623 So.2d 496 (Fla. 1993), in which certiorari could be granted. In Tucker, while the court concluded that the petitioner set forth a claim for relief that could not be effectively or adequately restored by appeal once it was lost by exposure to trial, the court found the order from which relief was sought did not violate a clearly established principle of law or otherwise depart from the essential requirements of law resulting in a miscarriage of justice. 610 So.2d at 461-462. We conclude that we clearly have both requirements present to exercise our limited and discretionary jurisdiction to grant certiorari.
We are impressed with the analysis presented by Judge Sawaya in his article in 40 University of Florida Law Review 461 (1988), discussing collateral estoppel by reason of the use of criminal convictions in subsequent civil proceedings. Because it is helpful in demonstrating the need for summary judgment in such cases and the thwarting of legislative intent if such summary judgments are not granted, we quote extensively from Judge Sawaya's article as follows:
In 1984, the Florida legislature also recognized the need to alleviate the victim's burden of establishing the convicted criminal's liability in a subsequent civil suit for damages, and enacted Florida Statutes section 775.089(8). This section is almost identical to its federal counterpart... .
One of the new provisions designed to fulfill the policies and goals of the VWPA is contained in 18 U.S.C. § 3580 (e). This section provides "the conviction of an offense that would properly give rise to restitution shall estop that defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the victim." The intent of this statute is to "obviate a victim's need to establish a defendant's liability in a civil suit for punitive and/or compensatory damages."
The Florida legislature, apparently using the VWPA as its model, enacted its Victim and Witness Protection Act, effective October 1, 1984. The Florida legislature noted that "the historic unresponsiveness *756 of the criminal justice system to the real needs of victims and witnesses has not yet been fully corrected" and "while state law provides the option of financial restitution to victims by defendants, most victims are never fully or even partially compensated by defendants for their injuries and other losses." In response to Florida's concern for the plight of crime victims, the legislature also enacted Florida Statutes section 775.089(8). This section provides that "a conviction for any offense involving restitution would estop the defendant from denying [the] essential allegations of that offense in any subsequent civil proceeding."
This new statute constitutes a substantial change in Florida law that will have a major impact on the victim's ability to recover damages against convicted criminal defendants without the long delays usually associated with such civil proceedings.
... .
By enacting Florida Statutes section 775.089(8), the legislature did what the courts have long been reluctant to do. This statute gives collateral estoppel effect to criminal convictions in subsequent civil proceedings brought by the crime victim. Both the Florida and federal statutes provide the victim with a powerful litigation tool that obviates the victim's need to establish the convicted defendant's liability in a subsequent civil action; thereby, substantially increasing the victim's chances of prevailing.
... .
These provisions are designed to eliminate a crime victim's need to establish a criminal defendant's liability in a civil suit for damages. The legislative intent for the enactment of those provisions would be severely frustrated by allowing a criminal defendant to escape their applicability simply because the criminal trial judge exercised his discretion in withholding adjudication of guilt.
... .
In the typical civil proceeding, the plaintiff would generally plead facts establishing the essential elements of the criminal offense. These allegations will establish that the plaintiff is the crime victim, and that the crime is an offense that gives rise to restitution under the VWPA. Furthermore, the plaintiff should attach a certified copy of the criminal court's judgment to the complaint. The collateral estoppel effect of the statute should thereafter be raised in a motion for summary judgment. Generally, the proceedings relating to the issue of liability should go no further.
... .
The victim will have a far greater chance of success in the civil courts, and the effort and resources he must expend to achieve the desired results will substantially decrease. The issues will be limited primarily to the damages sustained by the victim, and the possibilities of settlement of all issues will be greatly enhanced. This will result in a savings of time and money for the victim, and increase the potential for large settlement and damage awards.
... .
The goal of protecting the victim through the collateral estoppel provisions of the statutes can only be achieved if they are utilized.
We reverse the order denying injunctive relief and remand for treatment consistent herewith.
We grant the petition for certiorari and direct summary judgment be entered on the issue of liability alone as covered by Taborsky's criminal convictions.
DANAHY, A.C.J., concurs.
ALTENBERND, J., dissents with opinion.
ALTENBERND, Judge, dissenting.
I would affirm the trial court in the nonfinal appeal and would deny relief in the certiorari proceeding. Although Mr. Taborsky is estopped to deny the essential allegations of the offense for which he stands convicted, the trial court did not err on a motion for injunctive relief by requiring clear proof that Mr. Taborsky's current activities are in fact the result of the theft. Moreover, given our limited powers under certiorari, I do not *757 believe we can order the trial court to grant a summary judgment on these issues.
As the majority's opinion reflects, Mr. Taborsky was charged with grand theft of research notebooks, including data valued in excess of $20,000. He was also charged with theft of trade secrets. The judgment, which this court affirmed, expressly merged the theft of trade secrets into the grand theft. Thus, Mr. Taborsky has been convicted and sentenced for only grand theft of notebooks containing research data.
Based on Mr. Taborsky's conviction for grand theft, the trial court entered an order reserving jurisdiction to set restitution and provided: "The Defendant shall not utilize in any manner whatsoever for any purpose whatsoever any of this research material." It does not appear from the appendices filed by the parties to this nonfinal appeal that the trial court ever conducted a hearing to establish the amount of restitution. Indeed, one of USF's representatives testified during the criminal trial that USF had not, at that time, been damaged by Mr. Taborsky's application for a patent.[1]
Allegedly, Mr. Taborsky violated the nonutilization aspect of the probation order by obtaining a patent. The judge who presided over the revocation hearing apparently determined, by a preponderance of the evidence, that Mr. Taborsky violated his probation by obtaining the patent. On March 12, 1993, the trial court revoked the initial probationary term and sentenced Mr. Taborsky to a suspended term of 3 1/2 years' imprisonment, to be followed by 15 years' probation. As a special condition of that probation, the trial court again enjoined Mr. Taborsky from utilizing the stolen research. More important, the trial court required him to assign a specific patent to USF. Mr. Taborsky has appealed that order to this court in case number 93-01599.
Further, our court records in appellate case number 93-02558 reveal that the trial court revoked the March 12, 1993, probation order on July 12, 1993. The basis for the revocation was Mr. Taborsky's failure to assign his rights in the patent to USF. The trial court sentenced Mr. Taborsky to 3 1/2 years' imprisonment, to be followed by 11 1/2 years' probation. As a special condition of probation, the trial court ordered Mr. Taborsky to pay restitution. Mr. Taborsky has appealed that revocation and the sentence imposed.
I agree with the majority's decision not to impose an injunction requiring the assignment of the patent. Sections 772.14 and 775.089(8) cannot give estoppel effect to the conditions in a judge's order of probation. Such an order is not a final judgment or a conviction. Cf. Starr Tyme, Inc. v. Cohen, 638 So.2d 599 (Fla. 4th DCA 1994) (holding that nolo contendere plea in criminal case is not "conviction" for purposes of collateral estoppel statute; thus, defendant not estopped from offering proof of his defense in civil theft proceedings). Given the reduced burden of proof and the absence of trial by jury in a probation revocation proceeding, an order revoking probation should not typically create any estoppel in a civil action.
It might do little harm to give USF an injunction mirroring that portion of the probation order that generally prohibits use of the stolen research data. Because such an order already exists in the criminal case, I am not certain whether an additional order would have any major significance. On this record, however, USF has not established a factual basis justifying an injunction in a civil case. This record contains no sworn testimony or affidavits to establish that any work product of Mr. Taborsky, including the patent, is based upon the theft. Without expert assistance, it is doubtful that any judge could determine whether a patent or other current activity by Mr. Taborsky is derived from the information found in the stolen notebooks. Mr. Taborsky is certainly estopped to deny the theft, but USF has not met its burden of *758 proof and is not entitled to injunction or a summary judgment at this time.
Even if an injunction were appropriate at this time, I doubt we have certiorari jurisdiction to order the trial court to enter a summary judgment in this case. The delay caused by a denial of summary judgment might cause some inconvenience or monetary loss, but it would not result in the requisite "irreparable harm." See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987). If I were convinced that a trial court had no discretion but to grant a specific order under either sections 772.14 and 775.089(8), I would prefer to require entry of the order as a matter of mandamus. In this case, however, the trial court should not be compelled to enter such an order at this time.
NOTES
[1] Our limited record reveals that Mr. Taborsky had applied for his patent before the state filed the criminal charges. Evidently, USF thereafter applied for a patent. Mr. Taborsky was issued his patent after he was convicted of the criminal charges. Apparently, USF was not issued a patent. There are conflicting representations regarding the similarities of both patent applications, but there is no sworn proof in this record.