815 So.2d 1084 (2002)
Billy BROWN
v.
IMPERIAL TRADING COMPANY.
No. 2001-CA-1889.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 2002.
*1086 Thomas J. Cortazzo, Lamothe & Hamilton, New Orleans, LA, for Plaintiff/Appellee.
Sammie M. Henry, Johnson, Stiltner & Rahman, Baton Rouge, LA, for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III.
PLOTKIN, Judge.
The issue in this appeal is whether a cerebrovascular stroke, which occurred at home, after the employee left work is compensable. Defendants-Appellants, Imperial Trading Company (hereinafter "Imperial") and Louisiana Workers' Compensation Corporation (LWCC), appeal the judgment of the workers' compensation judge in which the plaintiff, the stroke victim, was awarded workers' compensation benefits. For the reasons discussed below, we reverse the decision of the workers' compensation judge.

STATEMENT OF FACTS
The plaintiff, Mr. Billy Brown, was employed as a checker with Imperial at its warehouse. He had been employed by Imperial since December 20, 1989. He worked the second shift which began at 2:00 p.m. and lasted until all the orders for the night were completed. Mr. Brown worked Sunday through Thursday each week. He claims that Sunday to Tuesday were the heavier days of the week and that Wednesday and Thursday were lighter. As a checker the plaintiff would check the totes that came to him on the conveyor belt. A tote is an open crate that had items inside. Brown was supposed to check the contents of the box against the order to insure that they matched up. When an item was missing, a checker was supposed to contact a selector who would retrieve the missing item in order to complete the order. Brown would retrieve the missing item himself in an effort to expedite the process.
Mr. Gregory Taylor, the supervisor in the warehouse for Brown's shift, filled out *1087 a job description for Mr. Brown. This stated that Brown spent 10% of his time lifting 10-20 pounds, 5% of his time stooping, 5% of his time reaching, 20% of his time walking and 60% of his time standing. The description stated that Brown carried items 40 times a day and that he kneeled for 1 minute 30 times a day. Mr. Gil Stroud, Imperial's Chief Financial Officer, stated that he was not sure if this was an accurate assessment of Brown's job description or if Taylor just made this up. This assessment of Mr. Brown's work activities is not determinative of his actual physical duties.
On Thursday May 14, 1998, Mr. Brown finished his work and helped his co-worker, Karen Williams, finish her work. Brown, Ms. Williams, and Darlene Brooks left the warehouse between 9:30 and 10:00 p.m. During the ride home Brown complained that his hands were cold and his fingers were numb. Mr. Brown did not complain that his job was too physically demanding. The day before the stroke Brown did complain of being hungry and tired but according to his co-workers this was not uncommon. Brown dropped off both of his co-workers and got home between 12:30 and 1:00 a.m. Upon arriving home he sat down and talked with his wife. She stated that he complained about the heat at work and that he had a headache. Later, Mr. Brown fell asleep in his chair. At around 8:30 a.m. on Friday, May 15, Mrs. Brown was awakened by the sound of things falling to the floor. She found Mr. Brown on the floor. The plaintiff had suffered a stroke.
Mr. Brown was taken to Pendleton Memorial Methodist Hospital where he was diagnosed as having suffered a left cere-brovascular accident with right hemiparesis. He was treated by Dr. Corey Cashman and Dr. Daniel Trahan. A Bilateral Carotid Doppler indicated that the blockage to the left internal carotid artery was greater than 80%. Mr. Brown had not previously been diagnosed with any heart related condition and he had no health complaints. Mr. Brown was subsequently transferred to Lakewood Hospital for rehabilitation. He was unable to return to work with Imperial.
On March 13, 2000, Mrs. Brown filed a Disputed Claim for Compensation with the Office of Workers' Compensation, claiming the right to workers' compensation benefits. She alleged that her husband's stroke was the result of his employment with Imperial. After a two day trial the workers' compensation judge found Mr. Brown suffered a compensable heart related accident on May 15, 1998 under LSA R.S. 23:1021(7)(e)(i)(ii). The judge found that there was clear and convincing evidence of extraordinary and unusual work-related stress and that Brown's stroke was predominately caused by the stress. The judge held that the plaintiff was entitled to all reasonable and necessary expenses due to his disability. The claimant's average weekly wage was $423.44 and the workers' compensation rate is $308.97 which the judge held was due from the date of the accident. The judge did not assess the defendant any penalties or attorney fees but did assess all costs against the defendant.

Heart Related Accident
The statute that is at issue in this case is LSA-R.S. 23:1021(7)(e) which provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:

*1088 (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. (Emphasis added).
In interpreting this statute the Louisiana Supreme Court noted that:
This statute makes it more difficult for a claimant to prove that heart-related and perivascular injuries suffered on the job are compensable. Specifically, the amended statute changes the law in such cases in at least three respects. First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant's physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury.
Harold v. La Belle Maison Apartments, 94-0889 p. 4 (La.10/17/94), 643 So.2d 752, 754-755.
The first prong of the statute requires the plaintiff to demonstrate that the physical work stress was extraordinary and unusual when compared to the average employee in that occupation. Courts have relied on the following definitions in interpreting the meaning of this statute. "Extraordinary" is defined as "going beyond what is usual, regular, or customary." Webster's New Collegiate Dictionary (1977). "Unusual" is defined as "not usual" and "uncommon;" that is, not in accordance with usage, custom, or habit. Id. These terms require the plaintiff to prove that his "physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation." Harold v. La Belle Maison Apartments, 643 So.2d at 755. "The statutory requirement that the stress be extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in the occupation relates to the work actually being performed at the time of the injury or death." Gooden v. B E & K Construction, 33,457 p. 6 (La.App. 2 Cir. 6/23/00) 764 So.2d 1206, 1210 (citing Laumann v. Dulac Shipyard, Inc., 95-2269 (La.App. 1 Cir. 6/28/96), 676 So.2d 823, writ denied, 96-1986 (La.1/10/97), 685 So.2d 142).
In the instant case, there is nothing to indicate that the work that Mr. Brown was performing prior to his stroke was unusual or extraordinary. If anything, the work that he was doing on the day before the stroke was easier than usual as Thursday is the end of their work week and thus the lightest day of work. As a checker, Brown was not required to partake in any physical activities. However, since he was a conscientious and hard worker, Brown often assisted his co-workers in performing their jobs. Brown, like some of the other checkers, would retrieve missing products himself as opposed to waiting for a selector to bring it to him. Darlene Brooks, one of the other checkers, testified that a checker's job was not really hard and that they did not do anything really strenuous. There was testimony that the summer months were the busier part of the year but the pace was not that unusual. The work that Brown did in the warehouse *1089 was not unusual when compared to the work performed by the other checkers. Thus, the evidence is not clear and convincing that the work Brown performed was extraordinary or unusual, as experienced by the average employee in that occupation.

Cause of Stroke
The second prong of the statute requires that the physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related injury. In the years leading up to the stroke, Mr. Brown did not see a doctor except when something was wrong so he does not have an extensive medical history. He was asymptomatic for heart disease prior to the stroke. When Mr. Brown was taken to Pendleton Memorial Methodist Hospital a Bilateral Carotid Doppler indicated that the blockage to his left internal carotid artery was greater than 80%. Mrs. Brown claimed that her husband had no prior knowledge of any heart disease and did not suffer from high blood pressure.
The workers' compensation judge held that "the continued stress to his system was a predominant and major cause of his heart disease (blockage) and the resulting stroke." In the reasons for judgment the judge stated that Dr. Olson, a neurologist who saw Mr. Brown, stated that the claimant's work at Imperial was the predominant and major cause of the stroke. Dr. Olson did not reach this conclusion in his report but merely stated that "the physical work and stress associated with his job was the precipitating factor in his ischemic stroke." Dr. Olson does not provide a sufficient basis for his opinion and the record does not support this assessment. The fact that Mr. Brown had a headache when he returned home from work does not alone indicate that the stroke was a result of his employment. The workers' compensation judge was clearly wrong in making the determination that the stroke was work related stress was a predominant cause of the stroke.
The findings of fact of a hearing officer are subject to the manifestly erroneous standard of review. Charles v. Travelers Insurance Company, 627 So.2d 1366 (La.1993). A reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). In discussing the requirements of this statute courts have held that:
The new `clear and convincing evidence' standard..[in the 1989 revision to the compensation laws] is a heavier burden of proof than the usual civil case `preponderance of the evidence' standard, but is less burdensome than the `beyond a reasonable doubt' standard of a criminal prosecution. See, Bryant v. Giani Investment Co., 626 So.2d 390, 392 (La. App. 4th Cir.1993), and the cases cited therein. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence.
Morris v. Reve, Inc., 95-310 pp. 8-9 (La. App. 5 Cir. 10/18/95) 662 So.2d 525, 528 (citing Lannes v. Jefferson Door Co., 94-1 (La.App. 5 Cir. 5/11/94), 638 So.2d 250).
The fact that Brown was eventually diagnosed with blockage of the left internal carotid artery greater than 80% does not alone prevent recovery. The Supreme Court has noted that this statute should not be interpreted "to preclude recovery of worker's compensation benefits simply because the claimant suffers from previously unknown but undoubtedly existent coronary artery disease." Harold v. *1090 La Belle Maison Apartments, 643 So.2d at 755-757. In that case the court held that if the plaintiff meets the heightened burden of proof imposed by the statute then he can recover. However, in the instant case, Brown has failed to prove by clear and convincing evidence that the work he was doing at Imperial was the predominant and major cause of the stroke. Unlike in Harold, any physical work that the Mr. Brown did while at Imperial was because he chose to, not because he was required to do so. Also "when the worker contributes some personal risk, the employment must be clearly shown to have increased the risk of injury before the employee can be compensated." Gooden v. BE & K Construction, 764 So.2d at 1210. Further, in this case there is no dispute that the plaintiff was not engaged in any type of work related activity at the time of the stroke. He had been at his home for at least seven hours prior to the stroke. Thus, Mr. Brown has failed to meet his burden of proof by clear and convincing evidence that this stroke was causally connected to his employment.

Reports of Treating Physicians
The defendants submitted Dr. Corey Cashman and Dr. Daniel Trahan to testify but due to scheduling conflicts they were not available at trial. The defendants offered the medical reports of these doctors in place of their testimony. The plaintiff objected since these doctors were not listed on the pretrial statement and because they had gotten the medical reports just prior to trial. The trial judge excluded these reports. Giving the above analysis, this evidentiary issue is moot. However, in the interest of judicial economy we will address it below.
The plaintiffs claim that Imperial did not disclose the Cashman report until the evening before trial and that the Trahan report was not disclosed until the morning of trial. The plaintiffs also contend that Imperial failed to disclose these doctors as potential witnesses since they were not named on defendant's pretrial statement. In discussing pre-trial orders this Court has held that
Although, a trial judge has great discretion in deciding whether to receive or refuse testimony objected to on the grounds of failure to abide by the pretrial order, any doubt must be resolved in favor of receiving the information. Curry v. Johnson, 590 So.2d 1213, 1216, (La.App. 1 Cir.1991). Moreover, the trial court is given express authority by La. C.C.P. art. 1551 to modify pre-trial orders to prevent "manifest injustice." Neff v. Rose, 546 So.2d 480, 483 (La.App. 4 Cir.1989).
Branscum v. Catherine, XXXX-XXXX p. 2 (La.App. 4 Cir. 4/5/00) 759 So.2d 234, 236. In the instant case the defendant listed on its witness list:
i) Any treating or examining physician or health care provider; and
j) Any witness listed or called by any other party.
As acknowledged by this Court in Branscum the trial judge should not limit a party's rights due a technical, though justifiable, violation of a pre-trial order. In the instant case, unlike in Branscum, the doctors at issue were not listed on any of the witness lists. The fact that the plaintiffs were aware of these doctors does not alone mean that their reports should have been admitted into evidence. Thus, the workers' compensation judge did not err in excluding the reports of Dr. Cashman and Dr. Trahan from being admitted into evidence.

CONCLUSION
The workers' compensation judge erred in finding that Mr. Brown had met his *1091 burden of proof by clear and convincing evidence. Mr. Brown failed to show that he experienced extraordinary and unusual physical work stress. Further, the plaintiff did not prove that physical work stress, and not some other pre-existing condition, was the predominant and major cause of his stroke. The workers' compensation judge was not in error in excluding the reports of Dr. Cashman and Dr. Trahan from being admitted into evidence.
Accordingly, the judgment of the workers' compensation judge is hereby reversed.
REVERSED.
McKAY, J., dissents.
McKAY, J., dissenting.
I respectfully dissent from the majority's decision to reverse and would affirm the judgment of the Office of Workers' Compensation.
In my opinion, the claimant demonstrated by clear and convincing evidence that his heart-related or perivascular injuries arose out of and in the course of his employment as required by La. R.S. 23:1021(7)(e). On his way home from work on May 14, 1998, the claimant complained of numbness in his hands and fingers. This was an indication that plaintiff was having a stroke. The claimant's treating neurologist related claimant's physical work at Imperial as the "predominate and major cause" of the stroke. Accordingly, I see no manifest error on the part of the court below.