JjMICHAEL E. KIRBY, Judge.
The City of New Orleans appeals a Judgment of the Workers’ Compensation Court that found claimant, John Richardson, to have sustained a compensable heart-related injury under La. R.S. 23:1021(7)(e) while employed by the City. The judgment awarded medical expenses in addition to the emergency room treatment for Mr. Richardson immediately subsequent to the accident..

STATEMENT OF THE FACTS

On or about January 10, 1972, the New Orleans Police Department (hereinafter “NOPD”) hired the claimant/appellee, John A. Richardson. After years in the employ of the NOPD, claimant was reassigned to Central Lockup as a Corrections Officer I. This position involved booking and processing prisoners.
When the Orleans Parish Criminal Sheriff assumed responsibility of Central Lockup, the NOPD offered claimant a transfer into communications. Subsequent to his placement in communications, the NOPD transferred claimant several more times. Around 1987, the NOPD transferred claimant to Fleet Management, which I ¡¿was a mechanic’s position. After six months within that division, claimant was assigned the title of “brake inspector.”
Even though claimant was assigned to Fleet Management, he continued to be classified as Correctional Officer I. This continued classification was not practical, however, as the Correctional Officers were in limbo following the change in control of the Central Lockup from the NOPD to the Orleans Parish Criminal Sheriff. Those officers who retained the classification of *663 Correctional Officers did not receive raises and were in jeopardy of layoffs.
While assigned to Fleet Management, claimant performed a variety of tasks. Claimant testified his duties consisted of more than brake inspections, and would often involve vehicle inspections. These vehicle inspections included tire inspections, front-end inspections, steering inspections, headlights essentially every part of a vehicle that could contribute to an accident.
His duties as brake inspector included inspecting the vehicle’s brakes whereever the vehicle was located, often at the scene of an accident amidst heavy traffic.
Claimant worked an eight-hour shift, but was on call twenty-four hours a day. He testified he would receive frequent calls, two or three times a night, after his regular shift ended. Not only was Richardson the sole brake inspector for the NOPD, but he was also the entire fleet inspector, performing inventory, gassing, bringing vehicles into the fleet, delivering vehicles out of the fleet, participating in | ¡¡narcotics seizures, retrieving license plates and any and all other duties that the department felt should be assigned to his division.
On April 10, 2001, claimant received a call regarding the need for a brake inspection of a school bus on Canal Boulevard. Claimant arrived at the scene and began his routine inspection of the bus, including the outside and inside of the bus, as well as going underneath the bus to inspect the brake lines. This bus was equipped with an air brake system, requiring claimant to physically manipulate the lines and rod to check for leaks. Claimant testified that working on air brakes is more difficult than working on hydraulic brakes because air brakes require one to manually pull out the chambers and brake drives using a tool for leverage. This requires the exertion of force due to the spring system.
While claimant was checking the steering rods, he felt a sharp, severe pain in his chest. He struggled to get to his police car to radio for assistance. Other officers had to complete the call for assistance as claimant’s pain was so severe he could not.
Emergency Medical Services transported claimant to Mercy Hospital, where he was admitted into the Intensive Care Unit. The next day, April 11, 2001, claimant underwent a coronary angiogram, which revealed a complete blockage of all grafts,[1] except the left internal mammary to the left anterior descending coronary artery.
| ¿Claimant testified that he was out of work for two weeks after April 10, 2001, and then returned to work at the NOPD as a brake inspector, although he no longer climbed under vehicles, but rather used an NOPD tow truck driver to do such work for him. He also testified that the position of brake inspector was stressful and that he had requested additional assistance on several occasions. At various times claimant was given two or three different people to train to assist him in the performance of these duties. However,4 after several weeks in the position, the trainees would eventually quit, finding the job too stressful.
Claimant continues to work with the ÑOPD. At the date of the accident he had been re-classified from a Correctional Officer I to a Protective Services Officer II. Moreover, it was because of the claimant and similarly situated officers, that new classifications were created, namely Protective Services Officer I-IV, which were broadly defined employment categories open only to those few remaining Correc *664 tion Officers still employed by the NOPD. The re-classification of the claimant in no way affected his job duties.

CLAIMANT’S MEDICAL HISTORY

Claimant’s cardiovascular problems began as far back as 1981. He originally treated with Dr. Melville Sternberg in September of 1981 for chest pain of four weeks duration, which Dr. Sternberg described as “classic anginal type pain.” Dr. Charles Pearce performed a triple aortoco-ronary bypass on claimant in October of 1981, after an angiogram revealed a ninety percent (90%) blockage in |fihis distal right coronary artery. Dr. Sternberg diagnosed claimant on discharge with arteriosclerotic coronary artery disease with anginal syndrome.
Dr. Sternberg recorded that claimant smoked two packs of cigarettes per day since age fifteen and drank twenty-five cups of coffee per day until the triple bypass. Claimant had a family history of diabetes and heart disease. On June 25, 1985, claimant had a sudden episode of severe pain that extended from his mid-back to anterior chest. Claimant had two subsequent episodes of chest pain and was admitted by Dr. Sternberg at the Touro Infirmary emergency room with unstable angina and arteriosclerotic heart disease.
In July 1987, claimant was hospitalized for a myocardial infarction. A coronary angiogram revealed a complete blockage of the left diagonal distal branch of his coronary arteries. Claimant was also found to have arteriosclerotic peripheral vascular disease. In November of 1988, claimant was rushed to the Touro emergency room, where he underwent an emergency angio-gram which revealed a complete occlusion of the graft to the obtuse marginal coronary artery. Claimant underwent a balloon angioplasty performed by his cardiologist, Dr. Raja Dhurandhar. There he was also diagnosed with diabetes mellitus, among previously mentioned heart conditions. Dr. Sternberg noted that claimant had continued smoking two packs of cigarettes per day after his July 1987 heart attack and had discontinued his prescription medicines.
On November 2, 1990, claimant was admitted to Touro again with unstable angina pectoris and progressive arteriosclerotic heart disease after experiencing 1 ¿recurrent substernal chest pain that radiated down his left arm since October 29, 1990. On November 5, 1990, claimant underwent coronary angiogram that showed a complete blockage of all grafts and severe four-vessel coronary artery disease. On November 7, 1990, Dr. Nicholas Mous-toukas performed a quadruple bypass on claimant.
On June 17, 1994, Dr. Sudhanva Wad-gaonkar performed a coronary angioplasty on claimant. On August 8, 1994, this same physician performed an angiogram on claimant, that revealed obstructions of both superficial femoral arteries. On August 10, 1994, Dr. Rudy Weichert performed a right femoral popliteal bypass. Dr. Weichert diagnosed arteriosclerotic peripheral vascular disease with occlusion of both superficial femoral arteries, steno-sis of the left iliac artery and arterioscle-rotic heart disease. On August 26, 1994, claimant was readmitted to Touro for an angioplasty of the left iliac artery by Dr. Weichert for left iliac artery stenosis.
Dr. Sternberg reexamined claimant on August 8, 2000. Claimant admitted he had not seen any physicians since 1994, had not monitored his blood sugar levels for his diabetes or taken any prescribed medications. As a result of a stress test on August 10, 2000, claimant submitted to a coronary aortogram by Dr. Roberto Quin-tal on August 15, 2000 that revealed a one hundred per centum (100%) blockage of the bilateral superficial femoral arteries.
*665 These events all preceded the April 10, 2001, accident in question.
[7Following the April 10, 2001 accident, claimant had two additional episodes of chest pain. The first occurred while climbing stairs, which he relieved with nitroglycerin and rest. The second occurred while claimant was driving his car.
On July 31, 2001, Dr. Dhurandhar readmitted claimant to Touro to have a defibrillator implanted to regulate his heart. On January 10, 2003, claimant was readmitted to Touro with complaints of chest pain. Dr. Dhurandhar scheduled him for outpatient cardiac catherization with Dr. Yount on January 14, 2003. Since the July 2001 defibrillator was implanted, claimant has denied any further coronary events.
The Office of Workers’ Compensation Court (hereinafter “trial court”) entered a final judgment on August 20, 2003. The trial court found that: (1) Claimant was employed by the City on April 10, 2001 (which the parties stipulated to at trial); (2) On April 10, 2001, claimant was involved in an accident which arose out of and was within the course and scope his employment with the City; (3) Claimant’s average weekly wage was $449.10, and his weekly workers’ compensation rate was $299.40 (which the parties had stipulated to at trial); (4) Claimant was injured as a result of the accident; (5) Claimant was entitled to temporary total disability benefits from April 10, 2001 to April 24, 2001 in the amount of $299.40 per week, plus legal interest on each installment from the due date, but he was not entitled to supplemental earnings benefits; (6) Claimant was entitled to have the City pay $7,529.21 in unpaid medical bills, including medical mileage, and to reimburse him the $2,191.35 for unpaid medical prescriptions, co-|paysR and deductibles; (7-8) the City reasonably controverted Richardson’s claim for workers’ compensation benefits and medical benefits and, thus, did not owe any penalties and attorney’s fees; and (9) assessed all costs of this proceeding, if any, against the City.
The City makes two assignments of error. First, the trial court committed manifest error in holding that claimant proved by clear and convincing evidence that he sustained a compensable heart-related injury in accordance with La. R.S. 23:1021(7)(e) while employed by the City on April 10, 2001. Second, the trial court committed manifest error in holding the City responsible for medical expenses, other than those for treatment he received at Memorial (previously known as “Mercy”) Hospital emergency room and Touro from April 10-13, 2001.

STATEMENT OF THE LAW

STANDARD OF REVIEW
Our appellate court standard of review for findings of fact in this matter is that of manifest error or the clearly wrong standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Stobart v. State, through DOTD, 617 So.2d 880 (La.1993).

COMPENSABLE HEART-RELATED INJURY

Louisiana Revised Statutes 23:1021(7)(e) is the applicable Workers’ Compensation statute pertaining to the first assignment of error and states:
|flA heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensa-ble pursuant to this Chapter, unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by *666 the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
[Emphasis added.]
This statute was amended in 1990. Three noteworthy changes made it more difficult for a claimant to prove that a heart-related or perivascular injury suffered on the job was compensable. In Harold v. La Belle Maison Apartments, 94-0889, p. 4 (La.10/17/94), 643 So.2d 752, 754-755, the Louisiana Supreme Court noted these three changes:
First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant’s physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or peri-vascular injury.
This requirement that the stress must be unusual and extraordinary in comparison to the stress experienced by an average employee in the same occupation relates to the work being performed at the time of injury. Brown v. Imperial Trading Company, 2001-1889, p. 4 (La.App. 4 Cir. 4/3/02), 815 So.2d 1084, 1088.
|inIn the present matter, claimant suffered a severe attack of angina pectoris. This attack occurred while claimant performed a brake inspection on a bus. Claimant testified that he rarely performed brake inspections on buses, as they were equipped with air brake systems, which required additional force and exertion to manipulate. In fact, claimant testified, that in his decade or so in the Fleet Management division, he had worked on only three prior buses.
Claimant argues and the trial court found that performing air brake inspections on buses was not a “usual or ordinary” occurrence for him, according to its interpretation of that language in La. R.S. 23:1021(7)(e)(i). As quoted above, this statute sets a standard based upon an “average employee in that occupation.” The workers’ compensation court also implicitly found that an average employee in claimant’s position would not be performing air brake inspections on-site.
At this point we note the difficulty of defining the duties of the average employee in claimant’s position, because he was the only brake inspector for the NOPD. This leads us to the central issue of this case, which is: whether the act of on-site inspection of a bus’ air brakes rises to the level of “extraordinary and unusual” in comparison to the stress or exertion experienced by inspecting a car’s brakes, which are not air powered.
This is a factual question. The workers’ compensation court answered in the affirmative, and there is support in the record for this finding. The fact that there are no other average employees to use as a gauge, gives weight to the finding that this unique work was “extraordinary and unusual.” Also there is the claimant’s | n testimony that he performed only four (4) air brake inspections on buses during fourteen (14) years he worked as a brake inspector. Finally, even though claimant had a preexisting heart condition, the medical records and statement of Melville *667 Sternberg, M.D., prove a causal link between the work stress of April 10, 2001 and the severe attack of angina pectoris claimant suffered, thereby providing the requirement the work stress was the predominant and major cause of the heart-related injury.
Given the duties of claimant and this particular factual scenario, coupled with the medical testimony, there is support in the record for finding that the on-site inspection of the bus’ air brakes was “extraordinary and unusual.” Thus, we cannot find the trial court’s conclusion was manifestly erroneous, and affirm its finding that a compensable heart-related injury occurred. Thus, we conclude claimant met his burden of establishing by clear and convincing evidence that a compehsable heart-related injury occurred.

LIABILITY FOR ALL OF CLAIMANT’S MEDICALS

The City’s second assignment of error addresses whether it should have been assessed all of claimant’s medical expenses, or only those immediately subsequent to the onset of angina pectoris.
Here we find the coronary angiogram the claimant underwent the day after the accident, i.e., April 11, 2001, to be quite revealing. Claimant’s coronary angiogram revealed a complete occlusion (blockage) of all grafts except for the left | ^internal mammary to the left anterior descending (LAD). Claimant’s blood sugar level was high and Dr. Dhurandhar’s notes state that the claimant did not watch his diet or check sugars at home. It was also noted at this time that claimant was still smoking two packs of cigarettes per day up until the time of the accident.
Even though the workers’ compensation court found the bus air brake inspection was the major cause of this episode of angina, we find -it was manifestly erroneous to conclude that the City should be assessed all of claimant’s medical expenses. We are impelled to this conclusion by virtue of- claimant’s long history, of heart ailments,-beginning with the 1981 diagnosis of unstable angina, his failure to properly care for himself over the years despite his medical history and the fact that almost all of his prior grafts were completely blocked. Therefore, on the issue of assessment of medical expenses, we remand to the workers’ compensation court for a determination of which of the sought medical services resulted directly from claimant’s angina episode on April 10, 2001. Only those medical services directly resulting from the onset of angina on that date should.be assessed against the City. We note that subsequent episodes of chest pain and shortness of breath on May 30, 2001 and July 18; 2001, are not compensa-ble.
Appellee contends the workers’ compensation court erred in failing to award penalties and attorney’s fees and for the City’s arbitrary and capricious failure to timely pay workers’ compensation benefits. Because of claimant’s medical history, we affirm the workers’ compensation court’s finding that the City did reasonably controvert the claim. A reasonable finder of fact could have concluded [13that the evidence in this case did not support a finding that this was a compensable heart-related occurrence. Because this other view of the evidence is permissible and reasonable, we affirm the workers’ compensation court’s denial of penalties and attorney’s fees.
Because we find the workers’ compensation court corr'ectly denied penalties and attorney’s fees, intervenor’s arguments are moot.'
In conclusion, we affirm the workers’ compensation court award of benefits, reverse its award of medical benefits and remand for a determination of which medi *668 cal expenses directly result from the occurrence of angina on April 10, 2001.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. As discussed infra, claimant had triple aor-tocoronary bypass in 1981, quadruple bypass in 1990, and right femoral popliteal bypass in 1994,