h MICHAEL E. KIRBY, Judge.
This unfortunate saga involves a dispute between two brothers that could not be kept from the court room. Plaintiff/Appellant, Michael Franco (Michael) filed suit against his brother Defendani/Appellee, Dr. George Franco, Jr., (George) for money, attoney’s fees and costs allegedly due him stemming from the sale of property the two brothers owned in Mississippi. In turn, George reconvened seeking monies allegedly owed him by Michael due to an advance of funds to a business entity the two managed. The trial court rendered Judgment in favor of George in the amount of $20,200.00. From this Judgment Michael appeals.

STATEMENT OF THE FACTS

In the summer of 1997, Michael presented George with an investment opportunity in a Northshore microbrewery and restaurant called Laughing Pines Slidell Brewpub. The business was to be operated through a limited liability company called Slidell Brewpub, L.L.C. (Brewpub). The brothers each made identical initial investments. After that point they do not agree.
| ¡Michael does not contest that beginning in 1997, George made a series of advances to the Brewpub on his own account because the Brewpub was having problems with cashflow. Michael also made some advances to the Brewpub initially. Nevertheless, those infusions of cash did not help the Brewpub’s cashflow problems. When it became apparent to Michael that the Brewpub’s cashflow problems were not capable of being reversed, he declined to put up any more money. Michael testified that at that point he advised George not to make any more investments in the Brewpub.
The watershed event occurred in January 1998. Michael testified that because the Brewpub needed cash to stay afloat, the shareholders decided to make an equity offering because no one wanted to make more cash loans to the Brewpub. In contrast, George testified that the result of this January 1998 meeting was a cash call from all shareholders. George testified that since he had loaned much more money to the Brewpub than Michael had, George would forgive enough of the loans to cover his part of the alleged cash call and a great part of Michael’s. However, Michael testified that this was a mischar-acterization of the facts and that any loan *166 that George made to the Brewpub was done without his knowledge. Moreover, Michael argues that even if such a loan existed, George made the loan to him over three years ago and it has- prescribed.
George characterizes the advance as a payment of Michael’s purported debt. He states that the Brewpub became insolvent and made an equity call for $31,800.00 from each of the brothers. Neither brother wanted to invest more-cash, |3so George alleges that they offered to forgive the Brewpub’s debt. Since Michael did not loan enough money to cover the cash call and George had loaned more than the amount of the cash call (George had loaned $86,000.00), George alleges they agreed that George would advance the debt he forgave to the Brewpub in Michael’s name to satisfy the cash call on Michael’s behalf. Therefore, George argues that this act was personal and has a ten year prescriptive period, as opposed to the three year prescriptive period for money lent.-
In 1993, George, Michael and their brother Philip A. Franco (Philip), sold property they owned in Pass- Christian, Mississippi, and financed $18,000.00 of the sales price for the purchasers. Michael had a 25% ownership interest in the property. The financing required the purchasers to pay monthly installments of $182.57 for fifty-nine (59) months, with a balloon payment installment which ultimately yielded $14,887.78. During the term of the owner financing, the purchasers made the monthly installment payments to George, who deposited them into an investment account with INVESCO Funds Group. By the time the balloon payment came due, the INVESCO account had accumulated a balance totaling $17,515.28.
On or about January 11, 1999, the purchasers paid off the balance due to the brothers. Adams & Reese handled the transaction and delivered the funds to George since he had been collecting the monthly payments for the brothers all along. ' George deposited the funds into the INVESCO account, and disbursed Philip’s share of the-funds to him. However, George did not disburse Michael’s [4share of the funds to him because of the alleged $21,000.00 debt Michael owed George as a result of the equity call by the Brewpub, which Michael had refused to pay.
By correspondence dated April 6, 1999, Michael made demand upon George for his 25% of the proceeds from the Pass Christian property, and threatened collection proceedings if not paid by April 12, 1999. In response to Michael’s letter, and as a follow-up to a telephone conversation which the brothers had in the interim, George wrote to Michael on April 8, 1999. In his letter, George gave Michael two options: submitting their respective claims to an “impartial arbitrator”; or, allowing George to give Michael’s share of the Pass Christian proceeds to their financially-needy mother in exchange for George’s forgiveness of Michael’s debt. George also offered that, if he were successful before the arbitrator, he would give any award he received against Michael to their mother.
George Franco did submit into evidence a check dated April 18,1999, in the amount of Seven Thousand Nine Hundred Sixty-Eight Dollars and Thirty-eight Cents ($7,968.38) made payable to Eleonora Franco Kennedy, the brothers’ mother, along with a letter dated April 20, 1999, stating that as per their agreement the remaining monies owed Michael from the sale of the Mississippi property were being given to their elderly mother for her medical bills. Ms. Eleanora Franco Kennedy corroborated George’s testimony. There was testimony that George tried to amicably settle this dispute by bringing it before their uncle who was a former Judge. *167 Moreover, there was testimony that Michael agreed to George giving his | .¡remaining portion of the money owed from the sale proceeds of the Mississippi property to their mother.

STATEMENT OF THE LAW

STANDARD OF REVIEW
Appellate courts review factual findings under the manifest error or the clearly wrong standard. Richardson v.City of New Orleans, 2003-2211 (La.App. 4 Cir. 12/1/04) 890 So.2d 661; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). This standard dictates that as long as the factual finding is a permissible view of the evidence in the record, then we cannot overturn it.

PRINCIPAL DEMAND

Michael appeals the denial of his claim for four thousand two hundred forty-six dollars and forty-four cents ($4,246.44). He sought this sum because he was owed seven thousand nine hundred sixty-eight dollars and thirty-eight cents ($7,968.38), which was his twenty-five (25%) percent proceeds of the sale of Mississippi property. After threatening to sue his other brother, Phillip, and Phillip’s law firm, George paid Michael three thousand seven hundred twenty-one dollars and ninety-five cents ($3,721.95), which was the amount of the balloon payment for which Michael alleged Phillip’s law firm was responsible. The difference between the seven thousand dollar sum and the three thousand dollar sum gives us the amount asked for in principal demand.
| [¡The trial court found that due to the brothers’ business activities in Laughing Pines Slidell Brewpub, L.L.C., George had loaned Michael a larger amount of money than the $7,968.38 owed from the sale of the Mississippi property. We classify the loans the trial court found to exist as natural obligations, La. C.C. art. 1760, et sequi-tur. La. C.C. art. 1761 states:
A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed.
A contract made for the performance of a natural obligation is onerous.
La. C.C. art. 1762 gives, examples of circumstances giving rise to a natural obligation, the relevant one here being when a civil obligation is extinguished by prescription.
The trial court also found that Michael had agreed to George paying the monies owed him from the proceeds of the land sale to their mother, in return for George forgiving Michael’s obligations. Since George paid Michael’s proceeds from the land sale to their mother the trial court found that George’s obligations to Michael for the land sale proceeds were extinguished. Because there is support for this view of the facts in the record we find no error in the trial court’s factual findings. Therefore, we affirm the dismissal of Michael’s claims against George.
| rjRECONVENTIONAL DEMAND
Insofar as the reconventional demand of George against Michael for monies loaned, we find that it has prescribed. La. C.C. art. 3494 states:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;
(2) An action for arrearages of rent and annuities;
*168 (3) An action on money lent; [Emphasis added.]
The trial court committed legal error in finding that the money George advanced on Michael’s behalf did not prescribe. In its Reasons for Judgment the trial court even characterized the advance to the LLC that George made as a “loan.” George testified that the brothers “loaned” money to the LLC. George also testified that the loan agreement occurred on or before January 19, 1998. There is no written evidence that Michael acknowledged the loan, other than over the telephone. Suit was not instituted on this loan until after three years had passed. Therefore, according to La. C.C. art. 3494 it has prescribed.
For the aforementioned reasons, we affirm the Judgment in part, insofar as it dismisses Michael’s claims against George and reverse in part, insofar as it awarded George twenty thousand two hundred dollars ($20,200.00).
AFFIRMED IN PART AND REVERSED IN PART